[No. 33380. Department Two. February 9, 1956.]

*In the Matter of the Estate of* JIM ZOULAS, *Deceased.* JAMES PAPPAS, *Appellant,* v. SPEDO SOUTHAS, *as Administrator, et al., Respondents.*[1]

*Christ D. Lillions* and *Baldrey & Peach,* for appellant.

WEAVER, J.—The attorney in fact of the heirs of Jim Zoulas, deceased, filed objections to the administrator's final account and petition for distribution and prayed for his removal. This is an appeal by the heirs from the order approving the administrator's final account and petition for distribution.

January 6, 1948, Jim Zoulas and Christopher Pappas purchased a restaurant and its equipment for $11,500, upon conditional sales contract signed by both. They spent a considerable sum of money to refurbish and remodel the restaurant before opening for business about April 7, 1948. The business was operated under an oral partnership agreement, and partnership checks required the signatures of both partners.

October 19, 1953, Jim Zoulas died intestate. His heirs are residents of Greece. At the time of his death, there was

[1]Reported in 293 P. (2d) 395.

$4,532.39 in the partnership checking account, subject to outstanding checks.

October 20, 1953, Spedo T. Southas petitioned the court for appointment as special administrator of the estate of Jim Zoulas. He alleged that

" . . . decedent had an interest in the Imperial Cafe . . . which requires immediate attention . . . Checks drawn on the account of said business require the signatures of decedent and Chris Pappas, the other owner of said business."

Although the statute (RCW 11.32.010) directs the special administrator "to collect and preserve the effects of the deceased," Southas petitioned the court that

" . . . the signature of Jim Zoulas on the checks be dispensed with and that the outstanding checks, bearing the signature of decedent, be honored by said bank."

A court commissioner authorized the immediate release of the partnership bank account, subject to the sole signature of the surviving partner, Chris Pappas.

At the trial, Southas testified that he

" . . . made frequent stops two or three times a day at the place, all during the night and daytime hours, and looked things over and saw how things were going";

but did not check the cash, verify the partnership bank account, represent the estate in the management, nor, in any manner, take possession of the restaurant.

November 2, 1953, Southas was appointed general administrator.

Appraisers were appointed November 27, 1953. Nothing further appears to have been done in the probation of the estate, except publication of notice to creditors, until February 8, 1954, when administrator Southas filed a petition to sell the estate's interest in the restaurant to the surviving partner, Chris Pappas.

The petition for sale (which presents the surviving partner's theory of this case) alleges:

"That about 1948 decedent and one Chris Pappas entered into a partnership for the operation of said Imperial Cafe and at said time said restaurant was entirely renovated and

remodeled with Chris Pappas advancing approximately $43,000.00 for said purpose. Said decedent had no funds and during the time while said restaurant was being prepared for operation said Chris Pappas advanced decedent $400.00 with which to live, said decedent having at said time no funds.

"There were no articles of partnership entered into between the partners in writing and their arrangement was verbal. However, as petitioner is advised, the money advanced by Pappas for the purpose of starting the said restaurant was to be returned to him and after all of the money had been returned to him, plus legal interest, the restaurant and the equipment thereof would belong equally to decedent and said Pappas.

". . .

"Said Pappas desires to sell said restaurant as his health is not good and in his endeavor to sell the same has been unable so far to get more than a $20,000.00 cash offer therefor, although, petitioner is advised, said Pappas would be willing to accept $20,000.00 if the same were paid him in cash. In the event Pappas receives said $20,000.00 he would still have owing to him an unpaid balance of $5,000.00, indicating that the actual cash value of decedent in said restaurant, at the time of his death, was nil.

"However, petitioner has arranged, subject to the approval of the Court, to have said Pappas pay $200.00 to decedent's estate for any apparent interest said estate might have in said restaurant and your petitioner feels that it is for the best interest of said estate to accept said sum of $200.00 for such interest."

Although the administrator and the surviving partner and his wife were in court when the petition was presented, none of them testified. We have quoted the petition at some length, because, after counsel read it aloud at the hearing, the following took place:

"The Court [Not the judge who eventually tried this case]: Well, I will sign the order on the petition you have alleged, the evidence stated in the petition, as far as the Court is concerned.

"[Counsel]: Fine. I would just like to ask Mr. Shay [bookkeeper for the partnership] about two questions so I can put it in here.

"The Court: I don't care.

"[Counsel]: I will promise not to take more than a minute or two.

"The Court: *The Court is not making any findings of fact on it.*

"[Counsel]: No, no.

"The Court: *I am just granting the order on the petition of the administrator is all.*" (Italics ours.)

Thereafter, Mr. Shay, who had kept the account books of the restaurant from the beginning, testified.

It is apparent that the trial judge gave no weight to Mr. Shay's testimony, having announced previous to it:

"I don't know what a lot of testimony is necessary for here on the record. It is not binding on anyone I know of."

Thus, on February 9, 1954, decedent's interest in the restaurant (whatever it may be) was ordered transferred to the surviving partner for two hundred dollars.

The heirs of decedent did not appear in this cause until April 29, 1954, when they filed a petition for stay of proceedings and request for notice.

May 10, 1954, three months after decedent's interest in the restaurant had been ordered sold, the administrator filed an inventory of decedent's assets. It listed, among other assets:

"Apparent interest in Imperial Cafe, 111 East Holly Street, Bellingham, Washington."

Presumably, relying upon the statute that,

". . . where personal property is sold prior to appraisement, the sale price shall be deemed the value for appraisal," (RCW 11.56.020)

the "apparent interest in Imperial Cafe" was valued at two hundred dollars.

The same day (May 10, 1954) the administrator filed an inventory and appraisement, he filed his final account and petition for distribution and discharge. June 2, 1954, the heirs filed their objections thereto.

June 29, 1954, the day the cause came on for trial, Chris Pappas, the surviving partner, was granted permission to intervene. Generally, the theory of his petition is the same

as that set forth in the administrator's petition to sell, quoted *supra*, namely, that after the surviving partner satisfies his personal claim against the partnership assets, decedent owns nothing. The intervener prayed it be decreed that the estate of decedent had no interest in the partnership assets.

After some testimony was taken on June 29, 1954, the trial was continued to August 18, 1954. On the day trial resumed, the surviving partner, for the first time, filed an inventory of partnership assets. It does not purport to be an appraisement. The partnership inventory lists the following:

"1. Lease on Imperial Cafe, #111 East Holly St., Bellingham, Wash. Expiration Date, December 31, 1955

"2. Bank account, less outstanding checks at date of death (overdraft)     $120.42

"3. Fixtures, equipment and remodelling of building, (total capital investment all contributed by Christopher Pappas)     $39,826.50

"4. Open Accounts Payable     $3,200.00

"5. Capital account payable to Christopher Pappas ($39,826.50, less $18,000.00 repaid)     $21,826.50"

(Respondents Southas and Pappas did not file briefs in this court. No argument has been presented to us, based upon possible rights of the surviving partner which may arise under the uniform partnership act. RCW 25.04. Our decision, therefore, is based only upon a consideration of the probate code.)

The fundamental error in this cause results from (1) the failure of the surviving partner to observe and comply with the procedural steps (which our statutes require of him) for the proper and orderly probation of the estate of a deceased partner (RCW 11.64.002); and (2) the neglect of the administrator to require (as he is authorized to do by statute) the surviving partner to comply with the statutory requirements. RCW 11.64.022.

RCW 11.64.002 provides:

"Within thirty days after the death of a partner the surviving partner or partners shall file a verified inventory of the *assets of the partnership* . . . The inventory shall state the value of the assets as shown by the books of the

partnership and a *list* of the liabilities of the partnership. If letters testamentary or of administration have been issued on the estate of the decedent, the surviving partner or partners shall cause the assets of the partnership to be appraised in like manner as the individual property of a deceased person, which appraisal shall include the value of the assets of the partnership and a list of the liabilities. The appraisers appointed by the court to appraise the separate property of the deceased partner shall appraise the partnership property, and the surviving partner or partners shall file the inventory and appraisal with the court in which the estate of the deceased partner is being administered." (Italics ours.)

It is apparent that the surviving partner was not only tardy in filing a purported inventory, but he did not comply with the statute by listing the "assets of the partnership"; nor did he submit a "list of the liabilities of the partnership." He listed only his conclusions. No intelligent appraisal of values can be made in accordance with the statute (and none was attempted) without this being done.

Death terminated the partnership. The heirs of the deceased partner are entitled to an accounting. This involves many things; but it can only be done after there has been a detailed inventory and appraisal of partnership assets, made in accordance with the statute, and a consideration of partnership liabilities existing at the date of death of the deceased partner.

We find no merit in the heirs' contention that the claim of the surviving partner is barred by the statute of nonclaim and the statute of limitations.

Since the partnership assets have never been properly inventoried nor appraised, we conclude that paragraph No. VI of the order approving final account and decree of distribution must be set aside. The surviving partner is directed to proceed forthwith in accordance with RCW 11-.64.002, *supra*.

Nothing contained herein shall foreclose the heirs from again petitioning the court for the removal of the administrator, in the event of his neglect or refusal to protect and conserve the interest of the estate. See RCW 11.64.022.

The heirs shall be entitled to judgment for one half their costs on appeal against the estate, and one half against the surviving partner.

This cause is remanded to the trial court with directions to proceed further in a manner consistent with views herein expressed.

It is so ordered.

DONWORTH, MALLERY, HILL, and ROSELLINI, JJ., concur.